## CHASE v. HIATT, Warden.
### No. 154.

District Court, M. D. Pennsylvania.
March 2, 1944.

Earl V. McLaughlin, of Scranton, Pa., for petitioner.

Frederick V. Follmer, U. S. Atty., of Scranton, Pa., and Herman F. Reich, Asst. U. S. Atty., of Lewisburg, Pa., for respondent.

WATSON, District Judge.

The defendant was indicted in the Southern District of New York on two counts, charged with possessing and passing a check on which he forged the name of the maker. He pleaded guilty to both counts and, on July 12, 1939, was sentenced to six months' imprisonment on Count One and to two years' probation on Count Two. March 8, 1943, he was arraigned for violation of probation. The probation was revoked, and he was sentenced to two years on Count Two. He is now serving that sentence in the United States Penitentiary at Lewisburg, Pennsylvania.

In this habeas corpus proceeding, the petitioner seeks release from further violation on the grounds set forth in his petition. Giving the petitioner the most favorable construction of his petition, it is alleged that at the time of the commission of the offense with which he was charged he was legally unbalanced and could not distinguish right from wrong; that he was convicted on a plea of guilty without counsel while insane; that there was an abuse of due process in that the court and prosecuting authorities knew that he was insane; that he had no attorney; that none was provided for him; that he did not intelligently waive his right to counsel, and that he did not know that he was entitled to that right.

Every one charged with a crime is presumed to be sane. Whether the petitioner was insane at the time of the commission of the crime or at the time of trial was a matter of defense provided the court had jurisdiction to determine the issue. It is conceded that the court did have jurisdiction. As against collateral attack the judgment is valid unless the contrary appears in the record, and such does not appear in the record in the proceedings. Hall v. Johnston, 9 Cir., 86 F.2d 820; Whitney v. Zerbst, 10 Cir., 62 F.2d 970.

The contention of the petitioner as to his insanity might be disposed of without further comment, as it is clearly without merit. However, the respondent saw fit to introduce much evidence as to the sanity of the petitioner and as to all the surrounding circumstances. This evidence is, in my opinion, deserving of some discussion, as it shows beyond question that the rights of the defendant, the petitioner here, were carefully guarded throughout the proceedings.

At the hearing on the rule to show cause why a writ of habeas corpus should not be issued, the petitioner's testimony consisted of his oral statements and two letters which indicate that he is a veteran receiving compensation on the basis of a temporary ten percent. disability, and that since 1922 his payments have been made to a conservator appointed for that purpose.

The testimony for the respondent at the hearing included that of a special agent who had originally investigated the charge; the United States Probation Officer who had conducted further investigations, and both the psychiatrist and psychologist of the United States Penitentiary. From this evidence it appears that the petitioner has a long record of violations, including numerous arrests on charges of obtaining money under false pretenses and by means of fraudulent checks; that, when arrested, he repeatedly claimed the defense of insanity and on numerous occasions was sent to hospitals for observation and examination. These included examinations at the Norwich State Hospital, Norwich, Connecticut, and in numerous United States Veterans' hospitals, extending over a period as far back as 1926. At the time of the commission of the offense with which he was charged in the instant case, he was at the United States Veterans Hospital, Castle Point, New York. At times it appeared that he claimed to have tuberculosis; at others that he was subject to epileptic seizures. The case history, as developed in the course of these various investigations, shows that as early as 1926, at the United States Veterans Hospital, Bronx, New York, and in 1928 and 1929, during an examination and further examination on re-admission at the United States Veterans Hospital, Rutland Heights, Massachusetts, the diagnosis was that there was no pulmonary tuberculosis, and insanity was excluded. He was subsequently transferred from the Fitch Soldiers Home, Norton Heights, Connecticut, 1929, and the United States Veterans Hospital, Bronx, New York, without any record of tuberculosis or insanity. He was later admitted to the Veterans Administration Facility, Northampton, Massachusetts, on November 25, 1935 and, at that institution as well as at all the preceding institutions, he was considered as not insane. The findings there were "he is given freely to fabrication"; and, as to his contention that he was subject to epileptic seizures, the finding was "there is no evidence of seizure, amnesia or psychosis". The diagnosis at that time was that he was simply "a case of constitutional psycopathic state, inadequate personality, with criminal tendencies"; and in 1935, on a subsequent admission, an additional finding was made that "he knows right from wrong and if he reverts to his previous actions such as forging checks he should not be sent to a hospital for protection but should take full measure of the law"; and the recommendation was made that he was "competent. Should be discharged to his own custody as he is not in need of hospitalization." During the same period the petitioner had obtained admission to the Norwich State Hospital, Norwich, Connecticut, and the findings at that institution are summarized in the records that "he is given freely to fabrication", also "that the typical criminal trend would seem particularly prominent", and the general conclusion was there reached that the petitioner was not psychotic but more the potential racketeer type, inclined to be a parasite on society; and again the diagnosis of "without psychosis" was made, which was in keeping with all the previous diagnoses; and with the final diagnosis summarized "not insane. Psychopathic personality". The psychiatrist who testified at the hearing summarized his case history as follows: "In general all their diagnoses seem to crystallize down to the concept of psychopathic personality, excluding epilepsy and excluding psychosis." All of this is confirmed and carried down to the present time by the careful examinations made of this petitioner by the psychiatrist and psychologist at the United States Penitentiary, Lewisburg, Pennsylvania, where he is now imprisoned.

The petitioner contended "the Government has produced no testimony to show this man's mental condition at the time of the violation of this parole." As to this point, it appears that, on February 23, 1943, shortly prior to his arraignment for violation of probation, a psychiatric examination was made under the supervision of the United States Probation Officer, and the opinion rendered at that time was "This man, at the present time, is not insane nor is he a mental defective". These steps show that there was full cognizance of the situation and adequate steps taken to protect any rights of the petitioner.

■ I can reach but one conclusion and that is, that the petitioner at no time here under consideration was insane; that, at all times here under consideration, he knew the difference between right and wrong, and is what is commonly termed a confirmed criminal, who has repeatedly attempted to take advantage of the claim of insanity for the sole purpose of escaping punishment for his crimes.

The further contention made by the petitioner is that at the time he entered his plea of guilty he did not have the benefit of counsel. Where the court records are silent, a question of this kind raised long after the plea is entered presents a difficult problem of proof. It is only proper, therefore, that, under the circumstances, the burden of establishing such a contention in habeas corpus should be upon the petitioner.

Buchalter v. New York, 319 U.S. 427, 63 S.Ct. 1129, 87 L.Ed. 1492; Zahn v. Hudspeth, 10 Cir., 102 F.2d 759; McLaughlin v. Sanford, Warden, D.C., 52 F.Supp. 954. However, notwithstanding the burden being upon the petitioner, the respondent introduced evidence which shows that three days before the arraignment of the petitioner, the petitioner had an interview with the Assistant United States Attorney. At this interview he was asked whether he had an attorney; whether he had any funds to employ an attorney, and the petitioner having answered that he did not, he was specifically told that he could have an attorney assigned for him if he so desired. He was told in that interview as to the nature of the charge against him; that the reason for its being a charge in Federal Court was because the alleged crime had occurred on a Government reservation. It appears that at this interview he was given every consideration; that he was asked whether there was anything else he wanted to know. During this interview he inquired as to what the effect would be of the restitution. He stated "My buddy took up a collection and made restitution on that check", to which the Assistant United States Attorney replied "That would not have any effect as to whether or not I was going to prosecute the case. At the time of sentence you could tell the Judge that you have no lawyer." The petitioner produced nothing to negative this direct proof.

That petitioner knew that he had a right to counsel, and that one would be provided for him, there can be no question. Instead of being denied the benefit of counsel, petitioner intelligently and understandingly waived the right. His constitutional rights were not invaded. They were protected in every way throughout all of the proceedings.

Now, March 2, 1944, the petition for a writ of habeas corpus is denied.